IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SKWIKAR ALI ABDELKADER,      *
                                 *
          Plaintiff,              *
                                 *
v.                                     *          Civil No. L-10-511
                                 *
SEARS, ROEBUCK & COMPANY,      *
                                 *
          Defendant.           *

************

**<u>MEMORANDUM</u>**

This is an employment discrimination case. Plaintiff, Skwikar Ali Abdelkader, alleges that Defendant, Sears, Roebuck & Company ("Sears") subjected her to religious discrimination and retaliated against her for reporting the alleged discrimination. Abdelkader filed suit under Maryland tort law, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e;). On June 24, 2010, the Court dismissed Abdelkader's tort and § 1981 claims but allowed the Title VII claims to proceed to discovery.

Now pending is Sears's Motion for Summary Judgment. Docket No. 21. Sears contends that Abdelkader was not subjected to religious discrimination and that she failed to exhaust her retaliation claim. For the reasons stated herein, the Court will, by separate Order of even date, GRANT the Motion and DIRECT the Clerk to CLOSE the case.

## I. FACTUAL BACKGROUND

The facts of this case are fully set forth in the parties' briefs and need not be restated herein. The essential facts are as follows.

### A. Abdelkader's Religious Observance

Beginning in August 2001, Sears employed Abdelkader in various capacities at its Hunt Valley store. In May 2007, Sears promoted Abdelkader to the position of Assistant Store Manager. Abdelkader is a practicing Muslim, and she continually requested not to work on Friday, which is the day of the Islamic Sabbath. Abdelkader acknowledges that Sears accommodated this request, at least until she became Assistant Store Manager.

As Assistant Store Manager, Abdelkader reported to Robert Babe, the Hunt Valley store's General Manager. It is undisputed that Babe was aware of Abdelkader's religious beliefs and that he never placed Abdelkader on the Friday work schedule. Nevertheless, Abdelkader claims that on eight occasions between November 2007 and February 2008, Babe demanded that she work on Fridays. Babe vigorously disputes this point. He claims that he never formally scheduled Abdelkader to work on Fridays, that he never demanded that Abdelkader work on Fridays, and that Abdelkader came to work unbidden on the days at issue. Notably, Abdelkader does not contend that Babe coerced her into working by threatening to dock her pay, terminate her employment, or otherwise reprimand her.

On December 11, 2007, Abdelkader asked to be excused from work so that she could celebrate the holiday of Id al-Adha, which was to be observed on Thursday December 20, 2007.[1] Babe had posted the December schedule before Abdelkader made her request, but he permitted Abdelkader to switch shifts with other employees so that she did not have work on the holiday. Ultimately, Abdelkader was able to switch shifts, and she did not work on Id al-Adha.

---

[1] Id al-Adha is the second of two Muslim festivals. It marks the culmination of the pilgrimage rites at Mina, Saudi Arabia and is celebrated by Muslims throughout the world. See generally Id al-Adha, Encyclopedia Britannica, http://www.britannica.com/EBchecked/topic/281649/Id-al-Adha (last visited Dec. 23, 2010).

## B.    The Termination

The facts leading to Abdelkader's termination are not in dispute.  Sears issues certain

discount cards to its managers.  The managers use these cards to approve "point of sale"

discounts to customers at cash registers.  According to Sears policy, a manager must approve all

such discounts, and the manager must be present when the discount is given.   In some cases, a

sales associate may use a discount card without the manager being present, but that associate

must first receive permission through a formalized process.

On February 21, 2008, Abdelkader gave her discount card to an associate and went to

lunch.  This associate had not been formally approved to use the card.  Another salesperson

informed Babe that Abdelkader had allowed the associate to use her card.  Babe then conducted

an investigation of the incident.  On February 25, 2008, Abdelkader admitted that she "wrongly

gave [her] card to one of [her] vaccum [sic] associates."  Consequently, Sears terminated

Abdelkader on March 1, 2008.  Babe's stated reason for the termination was that Abdelkader

"[gave] her employee discount card and [left] the building."

Abdelkader filed an EEOC Charge on August 13, 2008.  Her charge alleged

discrimination on the basis of sex, religion, and national origin.  She did not mark the box for

retaliation, nor did she assert a claim of retaliation in her statement of particulars. [2]

---

[2] Abdelkader's EEOC statement of particulars, in pertinent part, provides:

> I was told I was discharged for giving out my discount card which was previously
> approved as a manager.  When I attempted to provide names of others who have
> done the same thing, they refused to take my continuing statement.

> I believe I was denied religious accommodations due to my religion (Muslim) and
> subjected to unequal terms and conditions of employment and discharged due to

Neither party has specified when the EEOC issued its right-to-sue letter, but Adbelkader filed the instant suit on March 2, 2010. The Court granted Sears's Motion to Dismiss Counts III-VII of Abelkader's Complaint, and her sole remaining claims are for discrimination and retaliation in violation of Title VII. Sears has moved for summary judgment on each of these claims.

## II.     DISCUSSION

### A.     Standard of Review

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). In determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

### B.     Analysis

---

my sex (Female), national origin (Arab-Egyptian) and religion (Muslim) in
violation of Title VII of the Civil Rights Act of 1964, as amended.

D.'s Ex. A, Pl.'s Dep. Ex. 8.

Under Title VII, it is an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1); see Chalmers v. Tulon Co., 101 F.3d 1012, 1017 (4th Cir. 1996). Courts have recognized two theories of religious discrimination: (i) failure to accommodate and (ii) disparate treatment. See Chalmers, 101 F.3d at 1017. Abdelkader's Complaint embraces both of these theories. She argues that Sears failed to accommodate her religious beliefs by requiring her to work on certain dates, and that Sears terminated her because she is a Muslim. The Court will address each of these claims in turn.

### 1.    Failure to Accommodate

In Count I, Abdelkader alleges that Sears failed to her accommodate her religion by requiring her to work on eight Fridays and scheduling her to work on Id al-Adha. Under Title VII, an employer is obligated "to make reasonable accommodation for the religious observances of its employees." Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 75 (1977). To establish a prima facie religious accommodation claim, Abdelkader must prove that (1) "she has a bona fide religious belief that conflicts with an employment requirement;" (2) "she informed the employer of this belief," and (3) "she was disciplined for failure to comply with the conflicting employment requirement." Chalmers, 101 F.3d at 1019 (quoting Philbrook v. Ansonia Bd. Of Educ., 757 F.2d 476, 481 (2d Cir. 1985), aff'd on other grounds, 479 U.S. 60 (1986)). An employer is obligated to accommodate employees who refuse to work on particular days of the week because of religious reasons. See E.E.O.C. v. Ithaca Industries, Inc., 849 F.2d 116 (4th Cir. 1988).

"If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not accommodate the plaintiff's religious needs without undue hardship." Chalmers, 101 F.3d at 1019. "To satisfy its burden, the employer must demonstrate either (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such accommodation was not provided because it would have caused an undue hardship. . . ." E.E.O.C. v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008).

### a.      Id al-Adha

Sears met its accommodation burden by permitting Abdelkader to swap shifts so that she would not have to work on Id al-Adha. See 29 C.F.R. § 1605.2(d)(1)(i) (providing that the use of "voluntary swap[s]" constitutes a "[r]easonable accommodation"); Firestone Fibers & Textiles Co., 515 F.3d at 315-16 (finding that employer made reasonable accommodation by, among other things, permitting employees to "swap shifts . . . eight times per year").

Admittedly, the testimony on this issue is not crystal clear. At her deposition, when asked if Babe permitted her to swap shifts, Abdelkader said, "No, he didn't. Mr. Bob Babe said I can switch my schedule with my coworker, no." D.'s Ex. A, Abdelkader Dep. at 128. When asked to clarify, Abdelkader testified, "I asked [Babe] if I can switch with somebody, he said no. He said no. 'You don't have to change the schedule and I can make the people take over the shift.' He said, 'If you're able to do that, go ahead.' He said that exactly." Id. at 130. Babe testified that he permitted Abdelkader to swap shifts and that he would have intervened if other managers were unwilling to swap with Abdelkader. See D.'s Ex. B, Babe Dep. at 15 ("I asked her to ask a couple managers that were not scheduled that evening to make a switch and she

6

successfully made that switch); 15 ("I would have had to step in if she was not able to find some coverage for that.").

Taken together, this evidence establishes that although Babe was not willing to remove Abdelkader from the schedule, which he set before Abdelkader made her request, he permitted Abdelkader to swap shifts with a coworker. As a result, Abdelkader did not work on Id al-Adha, and Sears has established that it met its accommodation burden.

Although Babe permitted Abdelkader to swap shifts for Id al-Adha, she nevertheless contends that Sears did not meet its accommodation burden because Babe reprimanded her for observing Id al-Adha. Abdelkader does not have any direct evidence that she was reprimanded for observing the holiday. At her deposition, Abdelkader testified that in early January 2008, Babe "walked the floor with me and he said, 'There's a lot of things that need to be done' and [he] downgraded me, which I was unfairly graded to D. . . . I always get a B and A on my grade walking the floor so he made it as a D." P.'s Ex. A, Abdelkader Dep. at 131. Notably, Abdelkader has offered no evidence regarding this reprimand beyond her own assertion. She did not testify regarding the actual condition of the sales floor in January 2008, nor did she solicit testimony from Babe or a colleague regarding this incident. Given these facts, Abdelkader's claim fails because she cannot establish that the reprimand was related to the accommodation she requested.

Abdelkader's claim also fails because she has not established that the reprimand constituted adverse action for purposes of Title VII. The Fourth Circuit has noted that "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities [are] the typical requirements for a showing of an 'adverse employment action.'" Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999). Here, Abdelkader has not

demonstrated any concrete harm from the downgrade, nor has she established that the downgrade

led to her termination. Under these circumstances, she cannot make out a prima facie

accommodation case based on the January 2008 reprimand.


### b.      Fridays

The facts relevant to Abdelkader's "Fridays" claim are as follows. It is undisputed that

Babe never formally scheduled Abdelkader to work on Fridays, and he vigorously disputes ever

asking Abdelkader to work on a Friday. By contrast, Abdelkader claims that Babe demanded

that she work on eight Fridays between November 2007 and February 2008.

Because we are at the summary judgment stage, the Court is bound to accept

Abdelkader's version of the facts. Nevertheless, this claim also fails under the adverse action

prong. In a traditional accommodation case, a plaintiff brings suit because she has suffered some

discipline because of a conflict between her employment obligations and her religious practices.

See, e.g., Chalmers, 101 F.3d at 1019 (plaintiff allegedly terminated for sending religious letters

to co-workers); Ithaca Industries, Inc., 849 F.2d at 118 (plaintiff allegedly terminated for

refusing to work on his Sabbath). As mentioned above, the discipline at issue is usually

"discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility,

or reduced opportunities." Boone, 178 F.3d at 255.

It is undisputed that Sears did not dock Abdelkader's pay or otherwise punish her for

refusing to work on Fridays. Nevertheless, Abdelkader contends that requiring her to work on

Fridays was itself an adverse act. In some situations, requiring an employee to work under

conditions that would violate his religious beliefs, without more, might satisfy the adverse action

prong of an accommodation case. See Rodriguez v. City of Chicago, 156 F.3d 771 (7th Cir.

1998) (defendant conceded that plaintiff stated a prima facie accommodation claim where plaintiff alleged that city required him to guard abortion clinic despite his religious opposition to abortion). By contrast, an employer does not commit an adverse act if he permits his employee to take leave to avoid working on a religious holiday, even if the employee feels that requiring her to use leave is unfair and coercive. See Williams v. Harvey, No. 4:05CV161, 2006 WL 2456406, *10 (E.D. Va. 2006).

In this case, Abdelkader does not contend that Babe coerced her into working on the eight Fridays at issue, that she could not have taken leave to avoid working on those days, or that her refusal to work on Fridays led to her termination. Under these circumstances, she has not made out a prima facie accommodation claim.

### 2.    Disparate Treatment – Discriminatory Termination

Abdelkader also claims that Sears terminated her because of her religion. To state a prima facie claim of discriminatory termination based on religion, Abdelkader must prove that (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she was terminated from employment, and (4) the position remained open to similarly qualified applicants after her termination. See Marrs v. Marriot Corp., 830 F. Supp. 274, 281 (D. Md. 1992) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Abdelkader also must show that Sears "acted with discriminatory motive or treated [her] less favorably than others" because of her religion. Id.

Sears argues that Abdelkader cannot make out a prima facie case because she has not identified any non-Muslim managers who were not terminated for allowing associates unsupervised access to their discount cards. At her deposition, Abdelkader named three managers who permitted associates unsupervised access to their discount cards. These

employees are not similarly situated, however, because Abdelkader has not established that Babe

or any other store manager knew of these violations and failed to terminate the employees.  In

fact, Babe specifically testified that he was unaware that other managers allowed associates to

use discount cards without permission.

In her opposition, Abdelkader essentially concedes this flaw and does not discuss her

termination claim.  Because Abdelkader has not established that she was treated less favorably

than similarly situated non-Muslim employees, Sears is entitled to summary judgment on the

discrimination claim.

### 3.    Retaliation

Abdelkader also claims that Babe retaliated against her for reporting allegedly

discriminatory conduct to Sears's Human Resources department.  Abdelkader's retaliation claim

must be denied because she failed to exhaust her administrative remedies.  It is well-established

that filing a charge with the EEOC is a prerequisite to bringing suit under Title VII.  See Smith v.

First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000).  Because the resulting administrative

investigation is confined by the nature of the discrimination alleged, the EEOC complaint

"defines the scope of the plaintiff's right to institute a civil suit."  Bryant v. Bell Atl. Md., Inc.,

288 F.3d 124, 132 (4th Cir. 2002).

Abdelkader's EEOC charge alleged discrimination on the basis of sex, religion, and

national origin.  She did not mark the box for retaliation, and her statement of particulars does

not include any facts that would have resulted in administrative investigation of retaliation.[3]

---

[3] Abdelkader's EEOC statement of particulars, in pertinent part, provides:

> I was told I was discharged for giving out my discount card which was previously
> approved as a manager.  When I attempted to provide names of others who have
> done the same thing, they refused to take my continuing statement.

10

Accordingly, she is barred from bringing a retaliation claim in this suit. See id. at 132 (declining to consider retaliation claim where EEOC charge alleged only discrimination).

Assuming that Abdelkader was not procedurally barred from bringing her retaliation claim, Sears would nevertheless be entitled to summary judgment. Abdelkader could not make out a prima facie case of retaliation because she has offered no evidence that Babe knew that she engaged in protected activity or that he terminated her because she of that activity. See Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989) (listing elements of a retaliation claim).

Assuming that Abdelkader could make out a prima facie case, Sears nevertheless has a legitimate, non-discriminatory reason for her termination. Id. As mentioned above, Abdelkader acknowledges that Sears terminated her because she gave her employee discount card to a sales associate.

Abdelkader would then have the ultimate burden of proving, by a preponderance of the evidence, that Sears's proffered reason was merely a pretext masking discrimination. Id. She could not carry her burden on this point. Abdelkader has not put forth any direct evidence to establish that Sears's stated reason for her termination is pretextual, and her only circumstantial evidence of pretext is that Babe allegedly scheduled her to work on Fridays and religious holidays, and that she received a negative evaluation in January 2008.

Because the negative evaluation was not an adverse action, the Court need only discuss Abdelkader's work schedule and her ultimate termination. As mentioned above, the evidence

---

> I believe I was denied religious accommodations due to my religion (Muslim) and subjected to unequal terms and conditions of employment and discharged due to my sex (Female), national origin (Arab-Egyptian) and religion (Muslim) in violation of Title VII of the Civil Rights Act of 1964, as amended.

D.'s Ex. A, Pl.'s Dep. Ex. 8.

establishes that Sears accommodated Abdelkader's religious observance when scheduling her for work. With respect to the termination, there is no evidence that Babe knew that Abdelkader had engaged in protected activity. Therefore, no reasonable jury could conclude that his stated reason for the termination was pretextual. Accordingly, Sears is entitled to summary judgment on Abdelkader's retaliation claim.

## III.    CONCLUSION

For the foregoing reasons, the Court will, by separate order, GRANT Sears's Motion for Summary Judgment and DIRECT the Clerk to close the case.

Dated this _20th_ day of January, 2011.         _____/s/_____
                                                  Benson Everett Legg
                                                  United States District Judge